DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MCD ACQUISITION CO., et al., | ) | CASE NO. 5:10 CV 2855 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| NORTH RIVER INSURANCE COMPANY, | ) | |
| et al., | ) | |
| Defendant(s). | ) | |
| | ) | |

## I. INTRODUCTION

Plaintiffs, MDC Acquisition Co. ("MDC") and GRH Enterprises, Inc. ("GRH") (collectively, "Plaintiffs"), brought this declaratory relief action seeking a declaration that defendant Travelers' Property Casualty Company of America ("Travelers" or "Defendant"), has a duty to defend and indemnify Plaintiffs in a putative class action law suit filed in California. Now before the Court is the motion for summary judgment filed by Travelers' on November 4, 2011. ECF Dkt. #36. Plaintiffs, MDC Acquisition Co. ("MDC") and GRH Enterprises, Inc. ("GRH")(collectively "Plaintiffs") filed an opposition brief on February 7, 2012. ECF Dkt. #43. On February 24, 2012, Travelers filed its reply brief. ECF Dkt. #44.

Magistrate Judge George J. Limbert issued a report and recommendation recommending that the Court grant Travelers' motion. ECF Dkt. #46. Plaintiffs timely filed objections to the Magistrate Judge's Report and Recommendation. ECF Dkt. #47. On June 12, 2012, Defendant filed a response to Plaintiffs' objections. ECF Dkt.# 48. On June 26, 2012, Plaintiffs filed a sur-reply to Defendant's response. ECF #49.

After review of all materials, it appeared to this Court that summary judgment would be appropriate on the issue of Plaintiffs' claim of "Property Damage" coverage, even though this was not argued in the Defendant's moving papers. On September 12, 2012 the Court advised the parties of this, and by Order to Show Cause offered the Plaintiffs the opportunity for additional briefing on the issue. ECF# 53.

For the following reasons, summary judgment is granted to Travelers.

## II. <u>THE UNDERLYING ACTION AND THE INSURANCE POLICIES</u>[1]

In June of 2009, Universal Health Resources ("UHR") sued Plaintiffs in a putative class action lawsuit captioned *Universal Health Resources, et al. v. MDC Acquisition, et al.,* Case No.BC415244, in the Superior Court of the State of California for the County of Los Angeles ("underlying action"). In the complaint, UHR alleged that Plaintiffs violated provisions of the Telephone Consumer Protection Act of 1991 ("TCPA"), as amended by the Junk Fax Prevention Act of 2005 ("Junk Fax Act"), 47 U.S.C. 227, and the regulations promulgated under the Junk Fax Act by the Federal Communications Commission ("FCC"), by sending unsolicited facsimile advertisements to UHR. ECF Dkt. #1-1 at 9, ¶1.The complaint specifically alleges that "defendants, in furtherance of promotional campaigns, sent facsimile transmissions of unsolicited advertisements to Plaintiff and the Plaintiff Class in violation of the [Junk Fax Act] and FCC regulations." *Id.* The complaint explains that there are two affirmative defenses to a Junk Fax Act claim, the prior express invitation or permission defense and the established business relationship defense. *Id.* at 18, ¶20. These defenses  may only be invoked by companies

---

[1]Sections II, III and V of this opinion are adopted from Magistrate Judge Limbert's Report and Recommendation, with only minor changes.

2

that include a notice of opt-out opportunity on their facsimile transmissions. *Id.* at 18-21, ¶¶ 20,21, 22. The complaint alleges that none of the facsimile transmissions sent by Plaintiffs contained the opt-out notice. *Id.* at 21, ¶23.

According to the online docket for the Superior Court of California, Los Angeles County, an order granting a motion for preliminary approval of a class wide settlement of the underlying action was filed on April 20, 2012. Magistrate Judge Limbert's Report and Recommendation reflects that, at a telephonic status conference held on that same day, Plaintiffs' counsel informed the Magistrate that a settlement had been reached in the underlying action, and that Plaintiffs would dismiss Defendant, North River Insurance Company, as soon as a final entry of settlement was entered. Plaintiffs' counsel represented to Magistrate Judge Limbert  that Plaintiffs settled the case for approximately $6 million, $4.1 million in damages and $1 to 2 million in attorneys fees, which is within the Travelers' policies' limits. ECF Dkt# 46 at 1934.

MDC is primarily engaged in the business of selling supplies to the chiropractic industry. RGH is primarily engaged in the sale of durable medical goods. MDC and RGH are "sister corporations." ECF Dkt. #1-3 at 31. Plaintiffs have been continuously insured by Travelers since at least 2001. ECF Dkt. #43-1at 1363. At all times relevant to the underlying action, [2] Plaintiffs were insured by two types of policies issued by Travelers: a general commercial liability

---

[2] The complaint in the underlying action alleges violations including, but not limited to, October 8, October 23, November 25, December 19 of 2008, and March 18, April 8, April 16, April 22, May 13, May 20, May 27 and June 3 of 2009. *Id.*at 447 It further alleges, on information and belief, that members of the class  received additional illegal faxes from and after August 1, 2006.*Id.* Consequently, the time period relevant to the complaint in the underlying action is August 1, 2006 to June 3, 2009.

3

insurance policy ("commercial general liability policies") and a commercial excess liability insurance policy ("umbrella policies").[3]

Upon receipt of the underlying action, Plaintiffs timely tendered the defense of the lawsuit to Travelers. *Id.* at 1364. Travelers denied Plaintiffs' defense and indemnification under the insurance policies, on the basis the claims in the underlying action did not constitute "bodily injury" or " property damage" under the policies, and were not covered as a " personal injury", "advertising injury", or "website injuries." ECF Dkt. 6-1 at 238-244. Travelers further asserted that the "Unsolicited Communications Endorsement" specifically excludes coverage for TCPA claims, including those under the Junk Fax Act, an amendment to TCPA. *Id.*

### III. THE PRESENT ACTION

Plaintiffs filed the above-captioned action seeking a declaration that the exclusions upon which Travelers relies to deny defense and indemnification be ruled null and void and of no effect and the policies at issue be reformed to afford Plaintiffs the same coverage that was in existence prior to the promulgation of the exclusions by Travelers. ECF Dkt. #1-3 at 33. Plaintiffs

---

[3]Travelers issued liability policies to Plaintiffs for annual policy periods from May 15, 2006 throughJuly 15, 2010. These included Policy No. Y-SLS-290D6579-TIL-06 (effective May 15, 2006 to May 15,2007); Policy No. Y-SLS-291D057A-TIL-07 (effective July 15, 2007 to July 15, 2008); Policy No.Y-SLS-291D057A-TIL-08 (effective July 15, 2008 to July 15, 2009); and Policy No. Y-SLS-291D057A-TIL-09 (effective July 15, 2009 to July 15, 2010). MDC also alleges there was an additional Policy No. Y-SLS-290D6579-TIL-07 (effective May 15, 2007 to May 15, 2008).
Travelers issued umbrella policies to Plaintiffs for annual policy periods from May 15, 2006 through July 15, 2010. These included Policy No. YSM-CUP-290D6579-TIL-06 (effective May 15, 2006 to May 15, 2007); Policy No. YSM-CUP-291D057A-TIL-07 (effective July 15, 2007 to July 15, 2008); Policy No.YSM-CUP-291D057A-TIL-08 (effective July 15, 2008 to July 15, 2009); and Policy No. YSM-CUP-291D057A-COF-09 (effective July 15, 2009 to July 15, 2010). MDC also alleges there was an additional Policy No. YSM-CUP-290D6579-TIL-07 (effective May 15, 2007 to May 15, 2008).Copies of the insurance policies are attached as exhibits to Travelers' motion for summary judgment.ECF Dkt. 36-4-13.

4

seek reformation of the insurance policies because they contend that they did not receive notice of material changes in the policies.

In its opposition to Travelers' summary judgment motion, Plaintiffs state that "[a] substantial portion of the Plaintiffs' sales are generated by sending fax advertisements to existing customers. MDC alone has approximately 25,000 customers in its database who receive fax advertisements. In fact, discovery in the underlying action reveals that MDC sent 645,375 fax transmissions during the putative class period." ECF Dkt. #43 at 1342 (internal citations omitted). As a consequence, Plaintiffs contend that the lack of notice they received from Travelers regarding the change in coverage prevented them from either purchasing appropriate coverage from another carrier, or negotiating with Travelers to delete the exclusionary language from the policies for an increased premium. *Id.* at 1342-1343. Plaintiffs contend the insurance policy should be reformed by removal of the Unsolicited Communications Exclusion.

In its counterclaim, Travelers seeks a declaration that it has no contractual obligation, or any other legal or equitable obligation, to provide Plaintiffs with a defense or indemnification for the underlying action. ECF Dkt. #6 at 234. Travelers contends that Plaintiffs received actual notice of the changes to the policies, and the policies specifically exclude coverage for the injuries alleged in the underlying action.

## IV. STANDARD OF REVIEW OF A MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

Magistrate Judge Limbert's opinion recommended the grant of summary judgment for Travelers. Plaintiffs timely filed objections to Magistrate Limbert's Report and Recommendation.

The district court is obligated to "determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject or modify the

5

recommended disposition; receive further evidence; or return the matter to the magistrate judge

with instructions." Fed. R. Civ.P. 72(b)(3), *McCombs v. Meijer, Inc.*, 346, 360 (6th Cir. 2005).


## V. <u>STANDARD FOR ENTRY OF SUMMARY JUDGMENT</u>

Summary judgment should be granted "where the moving party has carried its

burden of showing that the pleadings, depositions, answers to interrogatories, admissions and

affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue

of material fact for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The court must

view the evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in its favor. *Johnson v. Karnes,* 398 F.3d 868, 870-873 (6th Cir. 2005).  The Court

must decide, "whether the evidence presents sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).

A party seeking summary judgment bears the initial burden and must inform the court of

the basis for its motion.  *Celotex*, 477 U.S. at 323.  Further, the moving party must identify those

portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits" which demonstrate the absence of a genuine issue of material fact.

*Id*.

Once the moving party satisfies its burden, the nonmoving party must demonstrate that

"there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris

Cos*., In*c*., 8 F.3d 335, 340 (6th Cir. 1993), see *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986).  The non-moving party must present "some significant probative

evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial."
*60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987), *see also First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 288-290 (1968).

A court may grant summary judgment on grounds not raised by a party, if it provides notice and a reasonable time to respond. Fed. R. Civ. P. 56 (f).

## VI. THE PLAINTIFFS' OBJECTIONS; RESOLUTION OF OBJECTIONS ##1,4 AND 6

The Plaintiffs make six objections to  Magistrate Judge Limbert's Report and Recommendation recommending summary judgment for Travelers:

1. "[T]he Magistrate completely ignored the fact that Travelers' purported notice of changes to Plaintiffs' renewal insurance policy was utterly misleading and confusing, "

2. "[T] Magistrate...failed to recognize that the means in which Travelers claims it provided notice to Plaintiffs regarding these significant changes to Plaintiffs' renewal insurance coverage was inadequate pursuant to Ohio law,"

3." [T]he Magistrate failed to recognize that Travelers' Unsolicited Communications Exclusion does not apply to the underlying class action litigation,"

4."[T]he Magistrate incorrectly determined that Plaintiffs did not have a viable "Property Damage" claim,

5."[T]he Magistrate failed to acknowledge Travelers' duty to defend even assuming arguendo no duty to indemnify existed,"

7

6. "[T]he Magistrate failed to recognize that Travelers' Motion for Summary Judgment argued as to 'Advertising Injury' claims only and thus Plaintiffs' 'Property Damage' claims, by law, remain pending."

Magistrate Judge Limbert ruled that "the allegations in the underlying action fall squarely within the Unsolicited Communications Endorsement," and that Plaintiffs were given valid and sufficient notice of the Endorsement. This Court agrees with these conclusions.  Given these holdings, it was not necessary to determine whether or not the alleged acts constituted an "Advertising Injury" or "Property Damage" under the policy because, even if the acts were otherwise subject to coverage, they were removed from coverage by the effect of the Unsolicited Communications Endorsement.  Thus, the Magistrate Judge did not consider whether or not Plaintiff would otherwise have a "Property Damage " claim (Objection #4), because any coverage that might have existed was eliminated by the endorsement. Similarly, the Magistrate Judge did not evaluate Plaintiffs' claims regarding the clarity or sufficiency of the notice regarding the "Web Extend Liability Coverage Form" (Objection #1) because he was not relying upon this form in his reasoning. Using the same reasoning, this Court will consider only whether Plaintiffs received adequate notice of the Unsolicited Communications Endorsement and whether the acts alleged in the underlying lawsuit are excluded from coverage by that endorsement.

With respect to the issue of waiver, Plaintiffs correctly note that Sixth Circuit precedent generally does not allow consideration of arguments first raised in a reply, rather than the moving papers. *Hunt v. Big Lots Stores, Inc.*, 244 F.R.D. 394, 397 (N.D. Ohio 2007). Plaintiffs were not prejudiced: they stated their "Property Damage" argument in their Opposition. ECF

8

Dkt.#43.1346-1349. Moreover, this issue (Objection #6) has been rendered moot, since the Court advised counsel of the possibility it would exercise authority under Fed. R. Civ. Pro.56 (f) to enter summary judgment regarding the "Property Damage" claim and allowed an Plaintiffs an opportunity for additional briefing. ECF Dkt.#53.

The remainder of this opinion will address the issues raised by Plaintiff's Objections ##2, 3 and 5.

**VII.  THE MAGISTRATE JUDGE  PROPERLY HELD THAT, AS A MATTER OF LAW, TRAVELERS' POLICYHOLDER LETTER PROVIDED ACTUAL  NOTICE OF THE UNSOLICITED COMMUNICATIONS EXCLUSION  (OBJECTION #2)**

A. RECEIPT OF THE POLICYHOLDER LETTER BY THE NAMED INSURED IS UNDISPUTED

The Affidavit of Brenda Wenger states that, as a Travelers' Account Manager, she was responsible for communications with the Plaintiffs, and that in the spring of 2005 she began negotiations regarding renewal of their policies for the period May 15, 2005 through May 15, 2006. ECF Dkt.36-17, 1205. She testifies she mailed the named insured, Edgepark Surgical, a policyholder letter notifying the Plaintiffs of changes in their upcoming renewal.[4] Her Affidavit of Mailing, dated March 11, 2005 establishes " the original notice(s)...was deposited in the United States mail in a sealed envelope bearing proper postage and addressed to the Insured." (The letter sent March 11,2005, and its enclosures, will be referred to as the "Policyholder

---

[4]Edgepark Surgical, Inc., the named insured in the applicable policies, is a d/b/a of Plaintiff RGH Enterprises Inc. *Id.* at 1206

letter".) The Policyholder letter shows the addressee as Edgepark Surgical, Inc., at its correct address in Twinsburg, Ohio. *Id*.

Ohio follows the common law presumption that a letter has been received, provided it was enclosed in a envelope, correctly addressed and stamped, and placed in the mail. *Griffin v. General Accident Fire and Life*, 94 Ohio App.403, 410 (1953); *Simpson v.Jefferson Standard Life Insurance Co.*, 465 F.2d 1320,1323 (6th Cir. 1972).

This presumption may be rebutted, and a question of fact created, if there is testimony the insured did not receive the mail. Almost uniformly, in those cases in which Ohio courts found a question of fact regarding receipt sufficient to defeat summary judgment, the testimony of non-receipt was given by the addressee, the named insured. *Kasakaitas v. Floering,* 1992 WL 55416 *2 (Ohio App. 6 Dist.)(non-receipt testified to by addressee, the named insured), *Smith v. Speakman* 2008 WL 5235172 ¶1 (non-receipt testified to by addressee, the named insured), *Free v. Auto-Owners Insurance Company*, 1988 WL 114333*3 (Ohio App. 6 Dist)(non-receipt testified to by addressee, the named insured). See also: *In re the Yoder Company, Debtor,* 758 F. 2d 1114, 1120 (6th Cir. 1985) (non-receipt testified to by the addressee, the insured's attorney). The Court has found one case in which the named insured was a corporation. *In Ekleberry, Inc. v. Motorist Mutual Inssurance Co*, 1992 WL 168835, *3, a representative of the company directly testified there was no notification. Thus, in each of these cases there was directly conflicting evidence as to whether or not notice was received by the named insured.

That is not the case at bar. **Plaintiffs have put forth no evidence that the notice was not received by Edgepark Surgical Inc**. In a carefully worded affidavit, Kurt Packer, Chief Operating Officer of one of the Plaintiffs, testified that the Unsolicited Communications

10

Exclusion "was never sent to any individual at either company." ECF Dkt #43-1 at 1365. He does not dispute that it was sent to or received by Edgepark Surgical Inc., the named insured. Thus, in this case the presumption of delivery to the named insured is unrebutted; there is no conflicting evidence. The Magistrate Judge properly found receipt by the named insured as a matter of law.

Plaintiffs' position seems to be that, since Mr. Packer, or some other person designated by the company as  responsible for the Plaintiffs' insurance, was not the addressee, there is no "actual notice" to the insured company and Plaintiffs can void the endorsement.  That is not the law and the position is untenable. Organizational charts change, people retire, or go on vacation. Travelers cannot be expected to contact every corporation or business they insure every year to find out the appropriate individual to address. Travelers is entitled to give notice to the named insured; after the notice reaches the company it is the company's responsibility to ensure it is routed to the correct person.  The problem here is not with Travelers' notice but with Plaintiffs' mail room.

## B. RECEIPT OF A SECOND POLICYHOLDER LETTER BY THE NAMED INSURED IS UNDISPUTED

Mr. Packer did, in fact, directly receive a copy of the Policyholder letter, as well as the endorsements to the 2005-2006 policies, excluding violations of the  TCPA and its amendment. These were physically delivered by Palmer & Cay to Kurt Packer.[5]  Plaintiffs do not deny the

---

[5] There has been some confusion as to Palmer & Cay's role. In briefs and affidavits filed prior to the Magistrate Judge's ruling, Plaintiffs refer to Palmer & Cay as "their agents."  Then, in their Objections to the Magistrate Judge's opinion, Plaintiffs cite Ohio Rev. Code Ann. §3929.27, which states that a person who solicits and accepts applications for insurance "shall be considered as the agent of the [insurer]..." and disclaim Palmer & Cay as their agent. What is

(continued...)

11

physical receipt and possession of these documents. (Affidavit of Kurt Packer, ECF Dkt. #43-1 at 1365) Instead, they argue these documents do not provide  notice because they didn't read them, and had no responsibility to "paw through" the 573 page notebook provided by Palmer & Cay.

In support of their position, Plaintiffs cite *Thomas v. Connally*, (1974) 43 Ohio Misc. 5, and various other Ohio cases that recite the well-established proposition that the insured is not required to "search the fine print of each renewal policy" to determine if there has been a modification. *Govt. Emps' Ins. Co. v. United States*, 400 F2d 172, 175 (10th Cir. 1968).

These cases are inapposite. First, the Policyholder letter was not part of an integrated 573 page document. The notebook provided to  Plaintiffs contained multiple insurance agreements, indeed, all the insuring agreements applicable to the Plaintiffs in 2005-2006. The Travelers' comprehensive and excess policies were separate documents in the binder.

But, most importantly, Travelers did not attempt to give notice of the modifications merely by transmittal of an altered renewal policy. Travelers used the Policyholder letter, a separate document that used bold face and clear language, to communicate the exclusion. As will be demonstrated in section I. C. of this opinion, this notice is sufficient to provide actual notice under Ohio law. The separate Policyholder letter, and copies of the endorsements excluding

---

[5](...continued)
undisputed is that Palmer & Cay was designated by Plaintiffs to negotiate with respect to their coverage and that Palmer & Cay provided a second copy of the Policyholder letter in an large policy binder containing their coverage for 2005-2006. Affidavit of Kurt Packer ECF Dkt #43-1 at 1365. The Plaintiffs claim they had no knowledge that the policyholder letter was contained in the binder until discovery in the underlying action. *Id*

Unsolicited Communications, were included with the renewal policies for Travelers' comprehensive and excess policies. Affidavit of Kurt Packer, ECF Dkt.#43-1 at 1364.

What Plaintiffs are proposing is a radical rule, and one that has never been adopted in Ohio: that a notice otherwise valid and sufficient to provide actual notice of modifications to one policy is rendered void if the notice, endorsements and policy are delivered along with other policies.

There is no case law that supports this position. There is no suggestion Ohio law says that if an individual or company holds more than one policy, and receives copies of more than one renewal policy at one time, this voids the actual notice provided by separate, clearly worded notices of exclusion that accompany any particular policy.

Plaintiffs' failure to even flip open the notebook and look at the materials relating to the renewal of the comprehensive and excess liability policies it claims were central to its continued operation should not invalidate Travelers' separate, valid notice of exclusion. And, indeed, self-induced ignorance of an insurer's actual notice cannot be used to frustrate or void modification of the renewal policy. As will be explained below, while insureds are entitled to assume the terms of a renewal policy are the same as their original policy, and  failure to read a renewal policy does not defeat reformation, *Allstate Insurance Co.* v. *Zampedro*, *supra, at *2,* knowledge of material change will be imputed to Plaintiffs if actual notice is provided through a "separately attached and clearly worded letter describing the modifications." *Id.*, *Allstate Insurance Co. v. Croom,* 2011 WL 1327425 (Ohio App. 8 Dist.).

>    C. THE FORM AND LANGUAGE OF THE POLICYHOLDER LETTER  PROVIDED
>       ACTUAL NOTICE TO THE NAMED INSURED OF THE UNSOLICITED
>       COMMUNICATIONS EXCLUSION

13

The language of Policyholder letter is clear and direct:

> In accordance with state notice requirements we are providing
> you with advance notice of a change affecting your renewal
> policy(ies). Please consult your agent or broker for guidance in reviewing changes
> pertaining to any important information contained in this notice...
> Your renewal policy(ies) provide(s) coverage on a more restrictive and/or
> broadened basis than your present contract(s) because an endorsement will
> added to your renewal policy which has both broadened and restrictive
> features. The attached policyholder notice(s) and/or copy(ies) of the
> endorsement(s) provide details of the changes.

Affidavit of Brenda Wenger, ECF Dkt.36-17 at 1209,1212,1213.

This language plainly and explicitly put the insured on notice that there are changes that will alter the renewal policies and that this is important information that the insured should review with their agent or broker. Driving home the point, in the last paragraph, the Policyholder letter reads:

> Your insurance program provides critical financial protection for your
> company...You should review and update your insurance program with
> your agent to help make sure it provides the protection you need for
> your business. For more information, please contact your agent.

The letter enclosed specimen copies of two exclusions, the first of which is not at issue here. The second was the Exclusion–Unsolicited Communications. In all bold type, all caps the notice declares:

## IMPORTANT NOTICE TO POLICYHOLDERS

## EXCLUSION–UNSOLICITED COMMUNICATIONS

The policyholder is advised, again in bold type, all caps: **PLEASE READ THIS NOTICE CAREFULLY.**  The notice goes on to advise that Travelers is attaching an exclusion of unsolicited communications, and states, "This endorsement is used to exclude unsolicited

14

communications in a variety of forms, such as email (spam), junk mail, unsolicited faxes of telephone calls. Many of these types of communications are now illegal under the Telephone Consumer Protection Act of state versions thereof." *Id*. at 1209

> Enclosed in the letter was a copy of the endorsement, which reads:
>
> **This insurance does not apply** to 'bodily injury', 'property damage', 'personal injury','advertising injury', or 'website injury' **arising out of unsolicited communications by or on behalf of the any insured** Unsolicited communications means any form of communication, including but not limited facsimile, electronic mail or telephone, in which the recipient has not specifically requested the communication. **Unsolicited communications also include but are not limited to communications which are made or allegedly made in violation of the Telephone Consumer Protection act and any amendments...**

*Id*. at 1214 (emphasis added).

Under Ohio law, an insurance company does not give an insured actual notice of a change in coverage by merely sending the policy alone, or with instructions to read the policy carefully. *Thomas v. Connally*, (1974) 43 Ohio Misc. 2,*8, *Allstate Insurance Co. v. Zampredro,* 1983 WL 6040 (Ohio App. 11 Dist.). Instead, Ohio courts, following the 10th Circuit ruling in *Govt. Emps' Ins. Co.v. United States,* have held that sending an endorsement as a "short, separately attached boldly worded modification," accomplishes actual notice to the insured. *Govt. Emps' Ins. Co.v. United States,* 400 F.2d 172, 175 (10th Cir. 1968), *Allstate Insurance Co. v. Zampredro*, 1983 WL6040*2 (Oh. App. 11Dist.) (citing *Govt. Emps' Ins. Co* and stating "a separately attached and clearly worded letter describing the modifications would be more adequate"), *Allstate Insurance Co. v. Croom,* 2011 WL 1327425 ¶12-¶ 15 (Ohio 8 App. Dist) (citing *Govt. Emps' Ins. Co* and holding that a notice sent on a separate piece of paper using bold type and capital letters is sufficient to give actual notice to the insured).

15

Travelers' notice satisfies all of the requirements established in *Croom*: it is on separate paper, and uses bold type and capital letters to call attention to the important changes described in the notice. *Id.* Indeed, Travelers' notice even goes farther, by using a separate mailing and attaching the short, clear endorsement itself. Such notice is more than sufficient to give actual notice under Ohio law.

### D. OHIO LAW DOES NOT REQUIRE AN INSURANCE COMPANY TO CONFIRM RECEIPT AND UNDERSTANDING BY THE INSURED; KNOWLEDGE OF THE POLICYHOLDER LETTER IS IMPUTED TO PLAINTIFFS, AND THE UNSOLICITED COMMUNICATIONS ENDORSEMENT IS PART OF THE CONTRACT OF INSURANCE

As set forth above, there are two theories that establish Plaintiffs' receipt of the Policyholder letter as a matter of law. First, as set forth in I. A., there is the unrebutted presumption that the Policyholder letter mailed March 11, 2005  to the named insured was received by the named insured,  Edgewater Surgical, Inc. Second, as set forth in I. B., Plaintiffs concede they received physical delivery of the Policyholder letter in a notebook containing their insurance policies for 2005. And, as demonstrated in Section I. C., the Policyholder letter, by its form and language, gave actual notice of the modification of the renewal policy under Ohio law. The result is the outcome reached by Magistrate Judge Limbert: Plaintiffs had actual notice of the Unsolicited Communications Endorsement as a matter of law, and Travelers has the right to enforce the provision.

Plaintiffs try to avoid this conclusion by arguing that "actual notice" requires that the Travelers confirm that the insured company–specifically, the  individual within a company tasked with handling insurance–actually got and read the notice of endorsement before they can issue a valid renewal.  For this, Plaintiffs in their Brief in Opposition to summary judgment rely upon a

16

1914 case, *J. R. Roberts & Sons v. National Ins. Co.* 2 Ohio App.463 (1914), and *Allstate Ins. Co v. Zampredro*, *supra*. Neither case supports their extreme position.

In  *J.R. Roberts,* the dispute respected a renewal that inserted an "iron safe" clause in the policy. The insurance company claimed that its local agent, E.M. Roberts, met with a member of the company, Walter Roberts, and provided oral notice of this change, along with a copy of the clause. Walter Roberts denied anything was said about an iron safe, or any safe, in his discussions with the agent and testified  that he did not receive a copy of the clause. With this disputed evidence, and noting in support of Walter Roberts's testimony the fact that the company did not own an iron safe, the Ohio Court of Appeals concluded the insurance company had not demonstrated that plaintiffs had been given notice of the change. *J.R. Roberts*, *supra*, at 4.

In *Zampredro* the  modification at issue dealt with rights of appeal after certain uninsured motorist arbitration hearings. The insurance company prepared a form describing the change, but the form was sent with plaintiff's renewal slip on October 1, 1980–and the accident occurred September 20, 1980. The court appropriately concluded the insured had not been given actual or constructive notice before October 1, 1980. *Zampredro, supra*, at *2.[6]

Both of these cases are consistent with the proposition that "actual notice" under Ohio law is timely notice, clearly worded and presented in a sufficiently bold manner as to bring the insureds' attention to the modification. The case that illustrates this, and is most clearly on point, is the 2011 case of *Allstate Insurance Co. v. Croom, supra*.

---

[6] In their Objections to the Magistrate's Report and Recommendation, Plaintiffs add as support for their proposition *Thomas v. Connally, supra*, a case which states that notice cannot effected simply by sending the policy. They also cite three cases in which the named insured rebutted the presumption of delivery, *Free v. Auto Owners Ins. Co*, *supra*, *Smith v. Speakman*, *supra*, and *Elkeberry v. Motorists Mutual Insurance Co.*, *supra.* All of these cases are inapposite

17

In *Croom*, Allstate's policy excluded coverage for claims arising from exposure to lead. Croom contended Allstate did not provide adequate notice of the exclusion when it was added to the policy, and that this invalidated the exclusion.

The evidence in the case was an affidavit by an Allstate employee establishing that notice of the endorsement was mailed to defendant Croom. Croom admitted he would have no basis to dispute the mailing, and that he "probably" received the policies and notices but didn't read them. On appeal it was contended that, without Croom's actual knowledge of the changes, the changes were unenforceable. *Croom,* ¶ 10.

The Court of Appeals of Ohio, Eighth District, disagreed: "Knowledge may be imputed to the insured, if the notice was presented in such a way as to call attention to any material change in the terms of the contract." *Croom,* ¶12 While noting that the issuance of a policy alone, or instructions to carefully read the policy, does not constitute adequate notice, the court stated. "However, notice is sufficient if it is provided in "a separately attached and clearly worded letter describing the modifications.[*Allstate Ins. Co v. Zampedro*], citing *Govt' Emps' Ins. Co. v. United States* (C.A.1 (sic) 1968), 400 F.2d 172." *Id.* Finding that Allstate's notice was separate, used bold type and capital letters, and was therefore sufficient under Ohio law, the court held that knowledge of the notice could be imputed to the insured, and the court held Croom bound by the exclusion. The rule established by *Croom* is that, if "actual notice" is received, knowledge of its contents may be imputed to the insured, even if the insured did not read the document.

*Croom* is directly on point with this case. Here, as in *Croom*, there is no issue of material fact regarding receipt. Here, as in, *Croom* the notice provided satisfied Ohio law. Here, as in *Croom*, the insured simply didn't read the notices sent. Here, as in *Croom,* Plaintiffs continued

18

paying premiums on the policy after the modification. The result here should be the same as in *Croom:* Plaintiffs should be held to have imputed or constructive knowledge of the Policyholder letter and be bound by the Unsolicited Communications Endorsement.

Finally, while cancellation is treated somewhat differently, it should be noted that there is one case from the Ohio Court of Common Pleas in which "the controlling question" was whether actual receipt of a notice of cancellation by the insured, as opposed to proof of mailing, is a prerequisite for policy cancellation.  Judge Sweeney held that, as a matter of public policy, the court should not allow cancellation of an insurance  policy to be valid upon proof of notice of mailing, but should require proof of actual receipt. *Smith v. Glove American Casualty Co.*, 38 Ohio Misc. 82 (1973). The judgment was affirmed for reasons other than those stated, and subsequent opinions have found *Smith* inconsistent with Ohio Supreme Court authority. *Canter v. Christopher*, 80 Ohio App.3d 465, 467 (1992).

**VIII. <u>THE MAGISTRATE JUDGE PROPERLY FOUND THAT THE UNSOLICITED COMMUNICATIONS ENDORSEMENT ELIMINATES TRAVELERS' RESPONSIBILITY TO DEFEND OR INDEMNIFY PLAINTIFFS IN THE UNDERLYING ACTION (OBJECTIONS ##3,5)</u>**

The Court finds there is no responsibility for Travelers to defend the underlying action. Since the duty to indemnify is narrower than the duty to defend, *Ferro Corp. v. Cookson Group*, 561 F. Supp 2d 888, 893,894, this holding necessarily means Travelers' has no responsibility to indemnify Plaintiffs.

The language of the Unsolicited Communications Endorsement is plain. The endorsement excludes "communications which are made or allegedly made in violation of the Telephone Consumer Protection Act ***and any amendments***." (emphasis added).The Junk Fax  Act is an

19

amendment to the TCPA. Junk Fax Prevention Act of 2005, Pub. L. No.109-21, 119 Stat.359

(2005)("Section 227(b)(1)(C)of the Communications Act of 1934 (47 U.S.C. (b) (1)(C) **is**

**amended** to read as follows") (emphasis added). Courts have made it clear that the Junk Fax Act

is an amendment to the TCPA. See, for example, *CE Design, Ltd. v. Prism Bus. Media, Inc*, 606

F.3d 443, 445 (7th Cir. 2010.)

      The underlying action is a complaint for violations of the Junk Fax Act and its

implementing regulations. Class Action Complaint, ECF #1-1,¶ 1. Plaintiffs argue that, since the

endorsement did not mention regulations, Travelers has a responsibility to defend the action. This

Court disagrees.  The Junk Fax Act specifically authorized the FCC to prescribe regulations to

implement the statute's prohibitions. 47 C.F.R.§641200 (b) (2). The FCC did so, issuing a 2006

Report and Order (*In the Matter of Rules and Regulations Implementing the Telephone Consumer*

*Act, Junk Prevention Act of 2005*, 21 F.C.C.R. 3787, 2006 WL 901720). These rules and

regulations specify the acts that are prohibited by the Junk Fax Prevention Act. It would be absurd

to conclude that violations of the regulations are not excluded by exclusion of violations of the

Junk Fax Act, the regulation's authorizing statute. The Ohio Supreme Court is clear that

insurance policies should not be construed in a manner that leads to an "absurd result." *Olmsted v.*

*Lumbermens Mut. Ins. Co.* (1970) 22 Ohio St. 2d 212, 216.

      Plaintiffs also argue that Travelers' should defend the underlying action because some of

their faxes were solicited, and the exclusion only applies to unsolicited communications. This

argument  fails because, in fact, the endorsement excludes communications "which are made or

allegedly made" in violation of the TCPA and its amendments. All of Plaintiff's faxes were

allegedly made in violation of the Junk Fax Protection Act. While the Act has two defenses--

20

"prior express invitation or permission" and an "established business relationship"–Plaintiffs cannot avail themselves of either since their faxes did not contain an Opt-Out Notice. The underlying action explains the situation quite clearly:" [A]ny sender of a junk fax who fails to comply with the Opt-Out Notice Requirements has, by definition, transmitted an 'unsolicited advertisement' under the JFPA. This is because such a sender can neither claim that the recipients of the faxed advertisement gave 'prior express invitation or permission' to receive the fax, nor successfully invoke the BBR [established business relationship] defense..."ECF Dkt #1-1, at 21,¶22. Plaintiffs did not comply with the Opt-Out Notice Requirements; all of their faxes were, by the terms of the law, "unsolicited."

Every allegation in the underlying action is of a violation of the TCPA and its amendments and any lawsuit that alleges a violation of the TCPA, and its amendments, is excluded from coverage by the Unsolicited Communications Endorsement. Plaintiffs have no defenses. "The duty to defend arises when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy." *Ferro Corp.v. Cookson Group*, 561 F. Supp 2d 888 at 898 (citing *Cincinnati Ins. Co. C. CPS Holdings, Inc.*, 115 Ohio At.3d 306, 307, 875 N.E.2d 31 (2007.)) But, there is no responsibility to defend when "there is no set of facts alleged in the underlying complaint against the insured that, if proven true, would invoke coverage." *Ferro Corp, supra* at 898. That is the situation in this case, and Travelers has no duty to defend or indemnify with respect to the underlying action.

**IX. CONCLUSION**.

For the foregoing reasons, summary judgment is granted in favor of Travelers. Case closed; parties to bear their own costs.

IT IS SO ORDERED.

September 27, 2012                                  *S/ David D. Dowd, Jr.*
——————————                          ————————————————
Date                                                        David D. Dowd, Jr.
                                                              U.S. District Judge

22